IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**KELLY CRADOCK,**

    Plaintiff,

vs.                                                                                                                No. _____

**PORTALES MUNICIPAL SCHOOLS' BOARD OF EDUCATION,
NATHAN DODGE, ARTURO ONTIVEROS, and
JOHNNIE CAIN, in their official and individual capacities,**

    **Defendants.**

## COMPLAINT

Kelly Cradock, by and through her counsel Egolf + Ferlic + Martinez + Harwood, LLC (Katherine "Kate" Ferlic, Heather Tanner, Nicholas A. Govea appearing) brings this complaint against Defendants for damages arising from the claims that follow.

## JURISDICTION, PARTIES, AND VENUE

1. Plaintiff Kelly Cradock is a resident of Santa Fe County, New Mexico.

2. Defendant Portales Municipal Schools' Board of Education is the governing body of the Portales Municipal School District, a political subdivision of the State of New Mexico, with its principal place of business in Portales, New Mexico. NMSA 1978 §22-5-4 (2018)

3. Defendant Nathan Dodge is a resident of Roosevelt County, New Mexico. At all times relevant to this complaint, he was the Vice Principal of Portales High School and acted under the color of state law.

4. Defendant Arturo Ontiveros is a resident of Roosevelt County, New Mexico. At all times relevant to this complaint, he was the Principal of Portales High School and acted under the color of state law.

5. Defendant Johnnie Cain is a resident of Roosevelt County, New Mexico. At all times relevant to this complaint, he was the Superintendent of Portales School District and acted under the color of state law.

6. The Court has original and supplemental jurisdiction over this action raising federal questions and related state law claims arising out of the same occurrence. *See* 28 U.S.C. §§ 1331, 1367(a).

7. Venue is proper in this district pursuant to 28 U.S.C. § 1391 as the incidents herein occurred in the State of New Mexico.

## FACTS

8. All allegations in preceding paragraphs are incorporated herein.

9. From August 2020 to February 2022, Plaintiff was employed as an English teacher at Portales High School.

10. Plaintiff received positive teacher evaluations during teaching years 2020-2021 and 2021-2022.

11. In 2020, the State of New Mexico provided all school districts, including Portales School District, with a list of books approved for use for teaching curriculum, which included the novel *The Hate U Give*, an award-winning young adult novel. *The Hate U Give* was within the approved curriculum for freshmen students as set forth by the New Mexico Public Education Department ("PED").

12. In the spring of 2020, Amberlynn Mauldin, the Chair of the English Department at Portales High School, provided Plaintiff with the list of approved books from PED.

13. *The Hate U Give* was included on the list of approved books for instruction by PED for instructional use by teachers at Portales High School.

14. Plaintiff selected and ordered *The Hate U Give* to teach in the 2021-2022 school year.

15. Ms. Mauldin objected to the book because she believed it was about the Black Lives Matter movement and anti-police.

16. Following discussion of the merits and themes of the book with the English Department, Plaintiff concluded it was an appropriate and important book to teach to students in Portales.

17. Plaintiff, like all teachers at Portales High School, was allowed to select the books that would be taught in their classes that academic year and purchase the selected textbooks with their allotted book budget of $3,000, which was assigned to individual teachers for their classroom libraries.

18. With her book budget funding, Plaintiff purchased a classroom library copy of *The Hate U Give* for the 2020-2021 school year, which went missing.

19. In the fall of 2021, Plaintiff reported to Amberlynn Mauldin, the Chair of the English Department at Portales High School, that her classroom library copy of *The Hate U Give* was missing and that Plaintiff did not believe it was taken by a student. Plaintiff also reported to Amberlynn Mauldin that she replaced the missing copy of the book out of her personal funds, but the replacement copy also disappeared.

20. Plaintiff attempted to purchase more classroom copies with her book budget, but her requests were denied without clear explanation by school administrators.

21. The only copy of *The Hate U Give* was removed from the Portales High School library during the 2020-2021 school year.

22. In December 2021, Plaintiff was informed by Vice Principal Nathan Dodge that all teachers were being asked to address increased student use of cell phones during class for non-school purposes, something made difficult because hybrid learning and lack of student computers required many students to use their cell phones as part of their school assignments.

23. In January 2022, Student Doe, an African American student, took a brief video of Plaintiff during class in which he walked up to Plaintiff, made incidental physical contact by briefly placing his hand on her shoulder, and asked her where another student was.

24. The video was posted on social media and brought to Plaintiff's attention. At Plaintiff's request, the video was taken down.

25. Shortly thereafter, Plaintiff was called into a meeting with Principal Arturo Ontiveros and Vice Principal Nathan Dodge in which they pressured Plaintiff to file sexual assault charges against Student Doe for the video in which he briefly touched her shoulder.

26. Plaintiff stated her objection to any form of discipline by the school against Student Doe for the video.

27. Plaintiff communicated that she did not agree that the student violated any laws, school policies, or the student conduct code, and refused Principal Arturo Ontiveros' and Vice Principal Nathan Dodge's request to file criminal charges against Student Doe.

28. Plaintiff reported to Principal Arturo Ontiveros and Vice Principal Nathan Dodge her good-faith belief that they were discriminating against Student Doe on the basis of race.

29. Specifically, Plaintiff communicated to Principal Arturo Ontiveros and Vice Principal Nathan Dodge that because other students (who were not African American) had made similar videos without facing school discipline or criminal charges, she believed the school's treatment of Student Doe was unlawful racial discrimination.

30. The racial discrimination by school administrators against Student Doe violated policies of PED, Portales High School, and the school district.

31. The racial discrimination by school administrators against Student Doe also violated Title VI of the Civil Rights Act 1964, 42 U.S.C. § 2000d *et seq.*, and the New Mexico Human Rights Act, NMSA 1978, § 28-1-7 (2020).

32. On or about January 14, 2022, Plaintiff told her Freshmen Honors English Class that they could vote whether to study *The Hate U Give* or another book, *Long Way Down*, which she would be teaching to the standard Freshmen Class.

33. The honors students voted to study *The Hate U Give*, and Plaintiff picked up 30 copies of the book from the school's shared storage closet.

34. On or about Friday, January 28, 2022, Plaintiff brought the books into her classroom and passed them out for students to look over. At that time, Plaintiff shared pre-reading discussion questions and led a student discussion on themes of the book, which included a discussion of racism.

35. Given the complex nature of the themes of the book, Plaintiff told her students that they had an option to study a different book if they preferred.

36. Following this discussion, two students complained to their parents about the classroom discussion and were reassigned by school administrators to another English class. Plaintiff learned the next day about the first student's transfer to another class. A few days later, the second student was also transferred. Neither student's transfer was communicated from administrators to Plaintiff, who learned of the transfers from other students.

37. On Monday, January 31, 2022, Plaintiff was called into Vice Principal Nathan Dodge's office, where he had a copy of *The Hate U Give* on his desk. Vice Principal Dodge told

Plaintiff that he needed to speak with her regarding parent complaints about the discussion of *The Hate U Give* in Plaintiff's classroom.

38. Vice Principal Dodge questioned why Plaintiff would want to teach the book in general and stated that she could not teach the book because parents had complained that she was teaching "Critical Race Theory" and pushing her personal and political beliefs onto students. Vice Principal Dodge accused Plaintiff of "hating police" and "hating white people."

39. Plaintiff explained to Vice Principal Dodge that the book had been approved by PED, the school's English Department, and selected by the students. Plaintiff explained to Vice Principal Dodge that all of the books taught in the English Department contained controversial subjects to one degree or another, and such discussions were a valuable and appropriate part of the curriculum. Plaintiff described the pre-reading discussion questions she used and the classroom discussion that followed. Plaintiff offered to address any issues or questions with parents and students directly.

40. Despite this, Vice Principal Dodge told Plaintiff that she could not teach the book because it "didn't look good" because of the contents and the parent complaints.

41. Plaintiff told Vice Principal Dodge that she would comply with his order and cease instruction of the book. She removed the copies of *The Hate U Give* from her classroom and placed the books back into the school's shared storage closet that same day.

42. Vice Principal Dodge told Plaintiff to meet with him and the parents who voiced concerns the next morning.

43. On Tuesday, February 1, 2022, as directed, Plaintiff arrived for the meeting with parents. When she arrived, Vice Principal Dodge told her that administrators already had met

6

with the parents without Plaintiff because one of the parents stated that she "didn't know what she would do to" Plaintiff if they were in the same room together.

44. Also that day, in an English Department meeting, another teacher questioned why the book was pulled from Plaintiff's classroom. In response, Principal Arturo Ontiveros yelled at the other teacher and Plaintiff. While standing close to Plaintiff, Principal Ontiveros yelled and pointed his finger in her face in criticism of Plaintiff's classroom discussion of *The Hate U Give*. Plaintiff stated that this inappropriate behavior was retaliation for her teaching *The Hate U Give*. Principal Ontiveros continued yelling and blocked the door as Plaintiff attempted to leave the meeting. Eventually, Plaintiff was able to leave the meeting.

45. Later that same day, Plaintiff was called into a meeting with Principal Arturo Ontiveros, Vice Principal Dodge, and Chris Bachica, another administrator. In the meeting, Plaintiff was reprimanded for teaching the book. Upon information and belief, Superintendent Cain knew of the issue and authorized and/or encouraged the reprimand.

46. After school on February 1, 2022, Plaintiff was called into another meeting with Principal Arturo Ontiveros, Vice Principal Dodge, and Mr. Bachica. In that meeting, the men began pressuring Plaintiff to resign. They questioned Plaintiff about why she chose to teach *The Hate U Give* and told her that teaching the book had caused "too much trouble." They questioned Plaintiff about what her husband thought about her working and whether her husband would prefer that she not work outside the home. The men pressured Plaintiff to resign because she was "too stressed" and should "spend more time with her daughters."

47. Plaintiff again offered to address the issue directly with the parents who complained, however, since the two students whose parents had complained had been removed from her class, Plaintiff no longer had access to the parents' contact information in the school's

7

software. When she asked the administrators for contact information for the parents, Plaintiff was told, "well, you're a smart girl, you can figure it out."

48. Plaintiff declined to resign during the February 1, 2022 meeting.

49. Beginning the next day, February 2, 2022, school administrators continued to pressure Plaintiff to resign.

50. On or around February 4, 2022, Principal Ontiveros disciplined Plaintiff for "allowing students to record videos of [her as their] teacher" in December 2021, something that had happened without Plaintiff's knowledge and something that Principal Ontiveros had been aware of since then. As discipline for this video, Plaintiff was placed on a form of probation where any teacher or administrator could come into her classroom at any time, without notice, for inspection and observation. Plaintiff was told that if any rules were observed to be broken in her classroom, including student infractions such as cell phone use or masks worn below the nose, Plaintiff would be written up.

51. Defendants' discipline was pretextual and in retaliation for Plaintiff's protected instructional speech for teaching *The Hate U Give* and for Plaintiff's report of her good-faith belief that the Principal Arturo Ontiveros and Vice Principal Nathan Dodge were discriminating against Student Doe on the basis of race.

52. In that same disciplinary meeting on February 4, 2022, Principal Ontiveros again pressured Plaintiff to resign, questioning whether Plaintiff's daughters were "suffering" without her at home.

53. In the following two-week period, Plaintiff's classroom was subject to random observation approximately four to six times by Vice Principal Dodge, four times by Amberlynn Mauldin, once by Chris Bachica, and once by Diane Vitale, the literacy coach. Plaintiff had

8

never heard of another teacher being subject to this kind of probation and observation. Plaintiff found the multiple observations to be intrusive, harassing, and disruptive of the educational environment.

54. In early February, during her prep time, Plaintiff briefly stepped out of her classroom while a student studied in the classroom. Upon returning, the student told Plaintiff that Principal Ontiveros and Vice Principal Dodge searched Plaintiff's classroom closet. Plaintiff called Principal Ontiveros and asked why her closet was searched. In response, Principal Ontiveros laughed and said he was conducting a "closet inspection." When Plaintiff asked other teachers about this, they told her there was no such thing as a "closet inspection."

55. On or around February 16, 2022, Principal Ontiveros approached Plaintiff in her classroom during prep time, slammed a teaching podium into her desk, put his finger in her face and repeatedly demanded her resignation. Another teacher observed a portion of this confrontation while standing in the hall.

56. On or around February 18, 2022, Plaintiff was forced to resign and submitted her resignation letter indicating her last day as a teacher would be March 18, 2022.

57. Although Plaintiff's announced date of resignation was March 18, 2022, Superintendent Johnny Cain terminated her employment effective February 22, 2022.

58. Plaintiff was terminated and/or constructively discharged.

59. Plaintiff's instructional use of *The Hate U Give* was appropriate for her students' age, sophistication, and level of maturity.

60. Plaintiff's instructional use of *The Hate U Give* supported PED approved, valid educational objectives.

61. Defendants lacked any legitimate pedological interest in preventing Plaintiff from using the book *The Hate U Give* in her curriculum.

62. Defendants constructively discharged Plaintiff in retaliation for her objection to the school's racially discriminatory treatment of Student Doe and for teaching *The Hate U Give*.

## CAUSE OF ACTION 1: DEPRIVATION OF CONSTITUTIONAL RIGHTS PURSUANT TO 42 U.S.C. § 1983

63. Plaintiff incorporates by reference the preceding paragraphs as though they were stated fully herein.

64. At all times relevant to this complaint, Defendants were acting within the course and scope of their duties as employees of Portales Municipal School District, a political subdivision of the State of New Mexico.

65. By their actions under color of federal and New Mexico law, Defendants intentionally, knowingly, willingly, and recklessly deprived Plaintiff of her clearly established Constitutional rights under the First Amendment.

66. By teaching and discussing *The Hate U Give*, Plaintiff was engaged in a constitutionally protected activity.

67. Defendants actions against the Plaintiff would chill a person of ordinary firmness from continuing to engage in her Constitutionally protected activity.

68. The Plaintiff's protected activity was a substantial or motivating factor in the Defendants' conduct.

69. Defendants Ontiveros, Cain and Dodge systematically abused their authority as Plaintiff's supervisors and the protections and powers afforded to them under state law and the

Portales Municipal Schools' Board of Education's policies and procedures to retaliate and deprive Plaintiff of her right to free speech.

70. At all times relevant to this complaint, Defendants acted under color of state law and were state actors.

71. As a result of these constitutional deprivations, Plaintiff has suffered significant injuries and damages.

## CAUSE OF ACTION 2:
## VIOLATIONS OF THE WHISTLEBLOWER PROTECTION ACT

72. Plaintiff incorporates by reference the preceding paragraphs as though they were stated fully herein.

73. In good faith, Plaintiff reported racial discrimination by Defendants on behalf of Student Doe and other black students.

74. Plaintiff refused to participate in the racial discrimination against Student Doe as directed by Defendants Principal Arturo Ontiveros and Vice Principal Nathan Dodge.

75. Plaintiff communicated to Principal Arturo Ontiveros and Vice Principal Nathan Dodge and others that based on disparate treatment of Student Doe from other students (who were not African American), she believed the school's treatment of Student Doe was unlawful racial discrimination.

76. The racial discrimination by school administrators against Student Doe violated policies of PED, Portales High School, and the school district; Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq.*; and the New Mexico Human Rights Act, § 28-1-7.

77. Thus, Plaintiff, a public employee, reported to a public employer, "information about an action or a failure to act" that Plaintiff "believe[d] in good faith constitutes an unlawful

or improper act," namely, the unlawful racial discrimination against Student Doe. NMSA 1978, Section 10-16C-3(A) (2010).

78.     In violation of Section 10-16C-3(A), Defendants retaliated against Plaintiff for her objection to and refusal to participate in unlawful activity by taking pretextual disciplinary action against Plaintiff, constructively discharged Plaintiff and terminated Plaintiff.

79.     As a result of Defendants' retaliation, Plaintiff has suffered lost wages, special damages, emotional distress, and other damages.

### CAUSE OF ACTION 3:
### NOTICE OF APPEAL FROM ORDER OF NON-DETERMINATION AND COMPLAINT FOR VIOLATIONS OF THE NEW MEXICO HUMAN RIGHTS ACT – SEX/GENDER

80.     Plaintiff incorporates by reference the preceding paragraphs as though they were stated fully herein.

81.     Plaintiff states a claim for violation of the New Mexico Human Rights Act, NMSA 1978, Section 28-1-7 (2020).

82.     The New Mexico Human Rights Act prohibits an employer from discriminating against or discharging an employee on the basis of the employee's sex or gender. *Id.*

83.     Defendants used Plaintiff's sex/gender as a basis to discriminate against her and create a hostile work environment which caused her termination and/or constructive discharge.

84.     Defendants frequently used misogynistic rhetoric and the fact that Plaintiff was a female married mother against her multiple times, in order to change the terms and conditions of Plaintiff's employment.

85.     Defendants pressured and attempted to force Plaintiff to file sexual assault charges against Student Doe for the video where he briefly touched Plaintiff's shoulder in attempts to weaponize Plaintiff's sex/gender.

86. Defendants repeatedly and continuously discriminated against Plaintiff in an attempt to humiliate and harass Plaintiff into resigning and fired her on the basis of her sex/gender.

87. Defendants discriminatory behavior resulted in Plaintiff's termination and/or constructive discharge.

88. Defendants are liable for sex/gender discrimination against Plaintiff and creating a hostile work environment.

89. Plaintiff has properly exhausted her administrative remedies under the New Mexico Human Rights Act, pursuant to NMSA 1978, Section 28-1-10 (2005).

90. As a result of the Defendants' violations of the New Mexico Human Rights Act, Plaintiff has suffered lost wages, emotional distress, and other damages.

**CAUSE OF ACTION 4:**
**NOTICE OF APPEAL FROM ORDER OF NON-DETERMINATION AND COMPLAINT FOR VIOLATIONS OF THE NEW MEXICO HUMAN RIGHTS ACT – RETALIATION**

91. Plaintiff incorporates by reference the preceding paragraphs as though they were stated fully herein.

92. The New Mexico Human Rights Act prohibits an employer from discriminating against an employee because that employee opposed discrimination in the workplace. *Fierro v. Mesa Verde Enterprises, Inc.,* 244 F.Supp.3d 1153,1162 (D.N.M. 2007).

93. NMSA 1978, Section 28-1-7(I)(1) (2020) provides that it is unlawful for any employer to "aid, abet, incite, compel, or coerce the doing of any unlawful discriminatory practice or attempt to do so."

94. NMSA 1978, Section 28-1-7(I)(2) (2020) provides that it is unlawful for an employer to "engage in any form of threats, reprisal or discrimination against any person who has opposed any unlawful discriminatory practice…".

95. NMSA 1978, Section 28-1-7(I)(3) (2020) provides that it is unlawful for an employer to "willfully obstruct or prevent any person from complying with the provisions of the Human Rights Act…"

96. Plaintiff opposed Defendants' racial discrimination of Student Doe.

97. Plaintiff refused to participate in the racial discrimination against Student Doe as directed by Defendants Ontiveros and Dodge.

98. Plaintiff communicated to Defendants that based on disparate treatment of Student Doe from other students (who were not black), she believed the school's treatment of Student Doe was unlawful racial discrimination in violation of the New Mexico Human Rights Act, § 28-1-7.

99. Defendants unlawfully discriminated against black students in their treatment of Student Doe and objections and retaliation for Plaintiff's teaching of *The Hate U Give*.

100. The racial discrimination by school administrators against Student Doe violated policies of PED, Portales High School, and the school district; Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq.*; and the New Mexico Human Rights Act, § 28-1-7.

101. Defendants attempts to coerce Plaintiff into filing sexual assault charges against Student Doe were both discriminatory of Plaintiff's sex/gender and Student Doe's race.

102. Defendants engaged in threats, reprisal or discrimination against Plaintiff because she opposed their unlawful discriminatory practices.

103. Defendants willfully obstructed or prevented Plaintiff from complying with the provisions of the Human Rights Act by creating a hostile work environment, retaliating againt Plaintiff and in forcing Plaintiff to resign and/or terminating Plaintiff.

104. As a result of the Defendants' violation of the New Mexico Human Rights Act, Plaintiff has suffered lost wages, emotional distress, and other damages.

## CAUSE OF ACTION 5:
## BREACH OF CONTRACT

105. Plaintiff incorporates by reference the preceding paragraphs as though they were stated fully herein.

106. Plaintiff and Superintendent Cain signed a Certified Employment Contract on March 27, 2021, which employed Plaintiff from August 9, 2021, through May 27, 2022.

107. Defendants intentionally, knowingly, willingly, and recklessly breached the terms and conditions of this contract by improperly discharging Plaintiff without cause and in retaliation for exercise of her Constitutional rights.

108. As a result of this breach of contract, Plaintiff has suffered significant injuries and damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Kelly Cradock respectfully requests judgment in her favor and against Defendants; damages to compensate her for mental anguish, emotional distress, past and future medical expenses, lost advancement opportunities; lost wages including double back pay; punitive damages; pre- and post-judgment interest; attorney fees and costs; and any other relief the Court may deem necessary and proper.

## **JURY DEMAND**

Plaintiff requests a trial by jury of all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Respectfully submitted,

EGOLF + FERLIC + MARTINEZ + HARWOOD, LLC

/s/ *Katherine "Kate" Ferlic*
Katherine "Kate" Ferlic
Heather Tanner
Nicholas A. Govea
123 W. San Francisco Street, Second Floor
Santa Fe, NM 87501
(505) 986-9641
Kate@EgolfLaw.com
Heather@EgolfLaw.com
Nicholas@Egolflaw.com
*Attorneys for Plaintiff*